Filed 12/14/15  P. v. Brown CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B254186 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. MA060845 and BA357017) |
| v. | |
| SHANTA RENEE BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa M. Chung, Judge.  Reversed in part and remanded.  Appeal of BA357017 is dismissed.

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

The trial court has a duty to instruct on a lesser included offense if there is substantial evidence from which a jury could reasonably conclude the defendant committed the lesser uncharged offense, but not the greater. That threshold requirement can be satisfied not only by conflicting evidence regarding an essential element of the greater offense (here, the use of force or fear to accomplish the taking of personal property as an element of robbery), but also by evidence that raises doubt as to the reliability of the prosecution's proof of a necessary element of the crime charged. Because such evidence was presented in this case, the trial court's failure to instruct on theft as a lesser included offense requires reversal of Shanta Renee Brown's conviction on two counts of robbery.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Information*

An information charged Brown with two counts of robbery (Pen. Code, § 211) and one count of second degree burglary (Pen. Code, § 459) based on Brown's shoplifting merchandise from a big-box retailer in Lancaster and her subsequent encounter with two of the store's loss prevention officers who unsuccessfully attempted to persuade her to return the items.

### 2. *The Evidence at Trial*

In the early afternoon of September 17, 2013 Adam Rollins, Tony Hernandez and Jeanette Ferrer, all loss prevention officers, watched Brown take various items of merchandise, place them in her purse or on her person and leave the big-box store without paying for them. Pursuant to store policy Hernandez and Ferrer waited to confront Brown until she left the store. They followed Brown outside, where Hernandez identified himself as a security officer and asked Brown to return the items she had taken. Brown denied the theft and started walking away. (At one point Brown said that she had just stepped outside to smoke a cigarette; at another that her mother had paid for the items at the cologne counter and could provide a receipt.) Hernandez and Ferrer again followed Brown and demanded she go back to the store.

2

Rollins ran from the store and caught up with his colleagues. He identified himself as a security officer to Brown and insisted she come back to the store with him. Brown refused, cursed Rollins and kept walking. Rollins grabbed the strap of Brown's shoulder purse in which she had concealed some of the stolen items before leaving the store. Rollins testified, after he had grabbed the strap of her purse, Brown "started to punch my arm." The strap broke, but Brown held onto the purse. Rollins released his grip on the broken strap and retreated because Brown had not stopped punching his forearm. Rollins testified Brown "was becoming hostile, so I needed to disengage from the situation."

After Rollins left, Hernandez and Ferrer remained with Brown, who continued walking away from the store. Hernandez stepped in front of Brown, faced her and again demanded she surrender the merchandise she had taken. Hernandez testified Brown "refused, and then she pushed me away." Rollins also claimed he saw Brown push Hernandez "out of the way." Hernandez, however, testified that Rollins had "headed back to the store," and he and Brown were in front of another retail establishment when Brown pushed him.

At this point Brown started running toward the street. Hernandez telephoned the sheriff's department to report that he and Ferrer were following a shoplifter. They elected not to try to chase Brown and lost sight of her after she boarded a bus.

Later the same day Brown returned the merchandise to the store. She admitted to Los Angeles County Deputy Sheriff Jorge Diaz, who had initially responded to the incident and then was called back when Brown returned to the store, that she had taken the items. She asked that she not be arrested because she had returned everything.

Brown neither testified nor presented other witnesses in her defense. The defense theory, developed primarily through cross-examination of the People's three witnesses— Deputy Diaz and the two victims, Rollins and Hernandez—was that the prosecution had failed to prove Brown used force to effect the taking of the merchandise.

Deputy Diaz interviewed Rollins at the store location shortly after the incident. Diaz testified Rollins had not told him that Brown repeatedly punched his arm when he

3

demanded she return the merchandise and grabbed her purse strap. Rather, Rollins said Brown had bumped him with her shoulder as he pulled on the purse strap. Rollins, on the other hand, testified he had been interviewed by a sheriff's deputy about the theft twice on the day it occurred and during the second interview he did report he had been punched. Rollins was not certain the same deputy had conducted both interviews. During his cross-examination, Hernandez testified he had spoken to a sheriff's deputy about the incident but could not recall whether he said Brown had pushed him.

In closing argument Brown's counsel reminded the jury Rollins had testified he typically responded to 20 incidents of shoplifting or theft per day while working at this big-box store. It was, therefore, questionable whether he or his colleague Hernandez would remember the details of any particular episode. In that context, defense counsel argued, the testimony as to the nature of the physical force that had been used by Brown, if any at all, was equivocal and contradictory, creating a reasonable doubt whether she had committed robbery.

3. *The Jury Instructions*

The trial court properly instructed the jury pursuant to CALCRIM No. 1600 on the elements of robbery, including that to prove Brown was guilty of robbery the People were required to prove she had "used force or fear to take the property or to prevent the person from resisting." The jury was also instructed a store employee who is on duty has possession of the store owner's property. In addition, the court instructed pursuant to CALCRIM No. 1700 that Brown was guilty of burglary if she entered the store building with the intent to commit theft. Neither the People nor Brown requested an instruction on theft as a lesser included offense of robbery. The court did not give the lesser included offense instruction sua sponte.

4

4. *The Verdict and Sentence*

The jury found Brown guilty on all three counts. The trial court sentenced her to an aggregate state prison term of six years, the upper term of five years for the robbery of Rollins and a consecutive term of one year (one-third the middle term of three years) for the robbery of Hernandez. The court stayed the sentence imposed for burglary pursuant to Penal Code section 654.[1]

**DISCUSSION**

1. *Standard of Review*

The trial court has a duty to instruct the jury sua sponte on all lesser included offenses if there is substantial evidence from which a jury can reasonably conclude the defendant committed the lesser, uncharged offense, but not the greater. (*People v. Whalen* (2013) 56 Cal.4th 1, 68; *People v. Rogers* (2006) 39 Cal.4th 826, 866-867.) The duty exists even when the lesser included offense is inconsistent with the defendant's own theory of the case and the defendant objects to the instruction. (*People v. Banks* (2014) 59 Cal.4th 1113, 1160, disapproved on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 391; *People v. Breverman* (1998) 19 Cal.4th 142, 155 (*Breverman*).) This instructional requirement "'prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete acquittal on the other. Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits."'" (*People v. Smith* (2013) 57 Cal.4th 232, 239-240; accord, *Banks,* at p. 1160; *People v. Campbell* (2015) 233 Cal.App.4th 148, 162.)

"'[T]he existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense . . . .' [Citation.] Such instructions are required

---

[1]     The court revoked Brown's probation in Los Angeles Superior Court case BA357017 and ordered executed a previously stayed state prison sentence to be served concurrently with the sentence imposed in the present case. Although Brown's notice of appeal includes the case number for the probation revocation proceeding, she does not mention that case in her briefs, let alone identify any reversible error by the trial court. Any appeal of the proceeding is dismissed as abandoned.

only where there is 'substantial evidence' from which a rational jury could conclude that the defendant committed the lesser offense, and that he is not guilty of the greater offense." (*People v. DePriest* (2007) 42 Cal.4th 1, 50; accord, *People v. Whalen, supra,* 56 Cal.4th at p. 68.) Substantial evidence is defined for this purpose as "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Breverman, supra,* 19 Cal.4th at p. 177.) Further, "[i]n deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Id.* at p. 162.)

We review the trial court's failure to instruct on a lesser included offense de novo (see *People v. Licas* (2007) 41 Cal.4th 362, 367; *People v. Manriquez* (2005) 37 Cal.4th 547, 581), considering the evidence in the light most favorable to the defendant (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30; *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137).

2. *Substantial Evidence Existed To Support an Instruction on the Lesser Included Offense of Theft*

a. *Theft as a lesser included offense of robbery*

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Pen. Code, § 211; see *People v. Williams* (2013) 57 Cal.4th 776, 781, 786.) A taking for purposes of robbery is "either the gaining possession or the carrying away" of the property. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8.)

"'The terms "force" and "fear" as used in the definition of the crime of robbery have no technical meaning peculiar to the law and must be presumed to be within the understanding of jurors.'" (*People v. Griffin* (2004) 33 Cal.4th 1015, 1025-1026.) Something more is required than the quantum of force necessary to accomplish the mere seizing of the property (*People v. Anderson* (2011) 51 Cal.4th 989, 995; *People v. Burns* (2009) 172 Cal.App.4th 1251, 1259; see also *People v. Morales* (1975) 49 Cal.App.3d

6

134, 139), but only such force as is necessary to overcome the victim's resistance. (See *Burns*, at p. 1259; *People v. Mungia* (1991) 234 Cal.App.3d 1703, 1708 [proper inquiry is whether "defendant engage[d] in a measure of force at the time of taking to overcome the victim's resistance"]; see also *Griffin,* at p. 1025 [the degree of force used, if not merely incidental, is immaterial].)

Theft, defined in Penal Code section 484 as the felonious stealing, taking, carrying, leading or driving away the personal property of another, is a lesser included offense of robbery. (*People v. Williams, supra,* 57 Cal.4th at pp. 786-787; *People v. Whalen, supra,* 56 Cal.4th at p. 69.) "The crime [of robbery] is essentially a theft with two aggravating factors, that is, a taking (1) from [the] victim's person or immediate presence, and (2) accomplished by the use of force or fear." (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 221; see *People v. Burns, supra,* 172 Cal.App.4th at p. 1256.)[2]

---

[2]     There was evidence the total value of the merchandise taken by Brown was slightly more than $142. Although the law of theft distinguishes between grand theft and petty theft—generally now with $950 as the threshold distinguishing the felony and misdemeanor offenses—neither robbery (taking property by force or fear) nor burglary (entering a building with intent to commit grand or petit larceny or any other felony) as traditionally defined is dependent upon proof of the value of the item or items taken. Effective November 4, 2014, however, Penal Code section 459.5, added by Proposition 47, The Safe Neighborhoods and Schools Act, defined a new crime of shoplifting, a misdemeanor, as "entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)." Penal Code section 459.5, subdivision (b), provides an act of shoplifting as defined in subdivision (a), must be charged as shoplifting and further specifies, "No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

Brown has not challenged her conviction for burglary in this appeal. However, if following a retrial it is determined Brown is guilty only of theft, not robbery, and there is no proof the value of the merchandise taken exceeded $950, Brown may be eligible for resentencing on that charge under Proposition 47's reduced punishment provisions, Penal Code section 1170.18, subdivisions (a) and (b). (See *People v. Shabazz* (2015) 237 Cal.App.4th 303, 313-314 [explaining appellate court may not reduce felony conviction to misdemeanor on direct appeal; sole remedy for defendant convicted of

Robberies in which the victim and the thief confront each other only after the perpetrator has initially gained possession of the stolen property are sometimes referred to as "*Estes* robberies" by California attorneys who practice criminal law and the judges before whom they appear. (See, e.g., *Miller, supra,* 115 Cal.App.4th at p. 223; *People v. Gray* (1998) 66 Cal.App.4th 973, 990.) In *People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*) a store security guard confronted the defendant in the parking lot after seeing him shoplift some clothing. Rather than surrender the items, the defendant drew a knife, swung it at the guard and threatened to kill him, which prompted the guard's retreat. On appeal the defendant challenged his robbery conviction on the ground "the merchandise was not taken from the 'immediate presence' of the security guard." (*Id.* at p. 27.) The *Estes* court rejected that argument, explaining, "The evidence establishes that the appellant forc[i]bly resisted the security guard's efforts to retake the property and used that force to remove the items from the guard's immediate presence. By preventing the guard from regaining control over the merchandise, defendant is held to have taken the property as if the guard had actual possession of the goods in the first instance." (*Ibid.*) The court concluded, "[A] robbery occurs when defendant uses force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence regardless of the means by which defendant originally acquired the property." (*Id.* at pp. 27-28; accord, *Miller,* at p. 222 ["[c]ircumstances otherwise constituting a mere theft will establish a robbery where the perpetrator peacefully acquires the victim's property, but then uses force to retain or escape with it"]; *People v. Flynn* (2000) 77 Cal.App.4th 766, 772 ["the willful use of fear to retain property immediately after it has been taken from the owner constitutes robbery"]; see also *People v. Phillips* (1962) 201 Cal.App.2d 383, 385 [affirming robbery conviction of defendant who had attendant pump gasoline into his car and then used force to drive away without paying for gasoline; although general rule is retention by force or fear of property

qualifying felony before Proposition 47's effective date is to petition trial court for resentencing and designation of felony as a misdemeanor].)

obtained peacefully does not constitute robbery, California law is contrary; "escape of the robber with the loot is a part of the robbery itself"].)

b. *The evidence regarding Brown's use of force*

The central issue at trial from the defense perspective was whether Brown had used force against Rollins and Hernandez sufficient to transform her act of shoplifting into an *Estes* robbery. The evidence in this case, if viewed in the light most favorable to the prosecution, was certainly sufficient to support Brown's convictions for robbery. (Cf. *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [standard of review for assessing a claim of insufficient evidence in a criminal case].) Rollins testified Brown repeatedly punched him as he attempted to grab her purse; Hernandez testified Brown pushed him out of the way when he attempted to block her path. Although the degree of force described by the two victims was far less than in *Estes* itself or most reported cases involving flight from a store security officer, under the prosecution's version of the facts it was sufficient to dissuade them from attempting to reclaim the stolen merchandise and to allow Brown to escape.

But, as discussed, in evaluating whether the trial court erred by failing to instruct on a lesser included offense, we consider the evidence in the light most favorable to the defendant. (See *People v. Brothers, supra,* 236 Cal.App.4th at p. 30; *People v. Millbrook, supra,* 222 Cal.App.4th at p. 1137). From that perspective, there was substantial evidence from which a reasonable juror could conclude Rollins's and Hernandez's recollections of the physical encounter with Brown were unreliable or even contrived—evidence highlighted by Brown's defense counsel in arguing the People had failed to prove she was guilty of robbing either man.[3] Most significantly, according to Detective Diaz, Rollins did not claim that Brown had repeatedly punched his arm as he tried to wrest Brown's purse from her grasp. Instead, he reported only that Brown had bumped him with her shoulder as he attempted to grab the purse, physical contact a jury

---

[3]     Brown's counsel, who did not request the theft instruction, apparently made the tactical decision to pursue this point while forcing an all-or-nothing choice between convictions for two robberies and a finding of not guilty.

might conclude did not amount to the use of force necessary for robbery. (See, e.g., *People v. Mungia, supra,* 234 Cal.App.3d at p. 1709 ["'Force' is a relative concept. An able-bodied and/or large person may experience a given physical act applied to her body as less forceful than would a feeble, handicapped or small person . . . . [¶] Furthermore, the defendant's physical characteristics in comparison to those of the victim may also be particularly relevant in determining whether the physical act applied by the defendant to the victim constituted 'force.' A shove by a defendant who is larger or stronger than his victim may lead a jury to find that the shove amounted to the necessary 'force.'"]; see generally *People v. Church* (1897) 116 Cal. 300, 303-304.)

Similarly, Hernandez could not recall whether he had told Diaz or any other sheriff's deputy investigating the crime that he had been pushed when he had verbally confronted Brown. In addition, Rollins testified he saw Brown push Hernandez even though the narrative provided by both Rollins and Hernandez indicated Rollins was not in a position to see that encounter, corroboration that could raise doubt as to the reliability of both witnesses' testimony.

"[A]n unexplainable rejection of the prosecution's evidence" does not constitute substantial evidence the defendant is guilty only of a lesser included offense. (*People v. Kraft* (2000) 23 Cal.4th 978, 1063.) For the reasons just discussed, however, rejection of Rollins's and Hernandez's testimony describing the physical force used by Brown would be far from unexplained. The evidence, viewed most favorably to Brown, raised sufficient doubt whether the element of force was present to require the court to instruct on theft. (See *People v. Morales, supra*, 49 Cal.App.3d at p. 140 [instruction on theft as lesser included offense of robbery required; "[t]he witness' distance from the event, her preoccupation with other matters, her inability to remember details, and the fact that the victim fell backwards all arguably cast doubt upon the accuracy of her testimony that the defendant deliberately pushed the victim . . . . [I]f the evidence disclosed reasons to doubt [the witness's] testimony, the witness' expression of certainty could hardly empower the court to ignore those reasons and withdraw the evidentiary issue from the jury"]; see also *People v. Burns, supra*, 172 Cal.App.4th at p. 1258 ["'[w]here the

10

evidence would support either crime and robbery is charged, the better practice is to instruct the jury on the lesser crime as well"].)

### 3. *The Failure To Instruct on Theft Was Not Harmless Error*

The Attorney General correctly observes that error in failing sua sponte to instruct on a lesser included offense in a noncapital case is reviewed for harmless error under the reasonable probability standard articulated in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Thomas* (2012) 53 Cal.4th 771, 814; *People v. Sakarias* (2000) 22 Cal.4th 596, 621.) Thus, reversal is required if, after examining the entire record, including the evidence, we determine it was reasonably probable the erroneous omission of the instruction on theft affected the outcome. (See *Thomas,* at p. 814; see also *People v. Prince* (2007) 40 Cal.4th 1179, 1267; *Breverman, supra,* 19 Cal.4th at p. 178.) "'''[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.''''" (*People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1534-1535; accord, *People v. Soojian* (2010) 190 Cal.App.4th 491, 519.)

In many cases the failure to instruct on a lesser included offense is properly deemed harmless "when the jury necessarily decides the factual questions posed by the omitted instructions adversely to defendant under other properly given instructions." (*People v. Lewis* (2001) 25 Cal.4th 610, 645.) But the fact the jury convicted Brown of robbery, necessarily finding she had used force or fear to take the merchandise, does not mean the omission of the theft instruction must be harmless. As the Supreme Court explained in *Breverman, supra,* 19 Cal.4th at page 178, footnote 25, "[T]he very purpose of the rule is to allow the jurors to convict of *either* the greater or the lesser offense where the evidence might support either. That the jury chose the greater over acquittal, and that the evidence technically permits conviction of the greater, does not resolve the question whether 'after an examination of the entire cause, including the evidence' [citation], it appears reasonably probable the jury would nonetheless have elected the lesser if given that choice."

In making this assessment, "'an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the

11

evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.'" (*People v. Thomas, supra*, 53 Cal.4th at p. 814.) Using this standard we cannot conclude the instructional error here was harmless. The evidence Brown was a thief was compelling (indeed, it was essentially undisputed). The evidence she used some degree of force to accomplish her thievery, as opposed to some incidental physical contact occurring as she made her escape, was much less clear. The jury understandably wanted to convict her of something. (See *Schad v. Arizona* (1991) 501 U.S. 624, 646 [111 S.Ct. 2491, 115 L.Ed.2d 555] ["'the absence of a lesser included offense instruction increases the risk the jury will convict . . . simply to avoid setting the defendant free'"].) If given the opportunity to convict her of theft (as well as burglary by entering the store with intent to commit theft), it is reasonably probable at least one juror would have elected that option and concluded there was a reasonable doubt she was guilty of robbery. (See *People v. Soojian, supra*, 190 Cal.App.4th at p. 520 ["[i]t appears that under the *Watson* standard a hung jury is considered a more favorable result than a guilty verdict"]; see also *People v. Sanchez, supra*, 228 Cal.App.4th at p. 1535 [quoting *Soojian*].)

## DISPOSITION

The judgment and Brown's convictions for robbery are reversed; her conviction for burglary is affirmed. The cause is remanded for a new trial and for further proceedings not inconsistent with this opinion. The appeal of BA357017 is dismissed.


PERLUSS, P. J.

We concur:


ZELON, J.                                          BECKLOFF, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12